IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DR. ALFREIDA HOGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) CASE NO._____ |
| | ) |
| ROBERT WILKIE, Secretary, | ) |
| UNITED STATES DEPARTMENT OF | ) |
| VETERANS AFFAIRS, a Federal | ) |
| Agency, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### Parties

1. Plaintiff, Dr. Alfreida Hogan (hereinafter referred to as "Dr. Hogan"), is of sound mind, over the age of nineteen (19) years, is an African-American female, and at all times relevant hereto, was a resident of the Northern District of Alabama, Southern Division.

2. Defendant, United States Department of Veterans Affairs, by and through Robert Wilkie, as Secretary of Veterans Affairs (and the Birmingham facility, hereinafter collectively referred to as "VA"), is a federal agency and was at all times relevant hereto, Hogan's employer. Hogan is a federal employee within the meaning of Section 710(f) and Section 717(a) of Title VII, 42 U.S.C. Section 2000(e)-(f) and 16(a).

3. The Defendant Robert Wilkie, Secretary of Veterans Affairs, is sued in his official capacity and, as such, is amenable to suit as provided in Section 717(c) of Title VII 42 U.S.C. Section 2000(e)-16(c).

1

## Jurisdiction

4. The jurisdiction of this Court is invoked pursuant to 706 and 717(c) of Title VII; U.S.C. Sections 1333, 1343(d), 1343(4) and 2201; 42 U.S.C., Sections 1981, 1981(a); 2000(e)-5(f); 5(g) and 16(c). This is a suit in equity, authorized and instituted pursuant to the above code sections. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by the above statutes, providing for injunctive and other relief against race discrimination and retaliation / reprisal.

5. Hogan has fulfilled all conditions precedent to the institution of this action under 42 U.S.C., Section 2000(e), et. seq. Hogan timely files this Complaint within ninety (90) days of the receipt of the Final Agency Decision from the Department of Veterans Affairs received on May 29, 2020.

## Venue

6. All actions complained of herein took place within the Northern District of Alabama, Southern Division. Venue of this Court is proper pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. 2000(e)-5(f)(3).

## Factual Allegations

7. Paragraphs 1 through 6 are realleged and incorporated herein by reference and made paragraph 7.

8. Dr. Hogan began her employment at the Birmingham VAMC in July 2012 as a Primary Care Family Nurse Practitioner.

9. In January 2014 she was promoted to Palliative Care Family Nurse Practitioner.

10. Dr. Steve Swetz was hired from the Mayo Clinic in 2015 to become the Chief of Palliative Care for the Birmingham VA. He was Dr. Hogan's immediate supervisor and primary collaborating physician.

11. Prior to Dr. Swetz's tenure, Dr. Hogan received satisfactory / outstanding ratings on her annual performance proficiencies.

12. From the beginning of his tenure, Dr. Swetz was combative, disruptive and disrespectful. He was not knowledgeable about VA policies, practices and procedures regarding palliative care. He singled out African American employees (Dr. Hogan and Dr. Michael Johnson) for harassing behavior based on their race.

13. An EEO complaint was made against Dr.Swetz in 2018 and shortly thereafter, he stepped down from his position.

14. Initially, Dr. Swetz gave of Dr. Hogan's charting / documentation satisfactory reviews.

15. Dr. Swetz then attempted multiple changes in the charting process, the coding process and Dr. Hogan's scope of work that were not approved and not in keeping with the VA's established policies and procedures.

16. As a result of these unapproved changes, Dr. Hogan's performance began to suffer as she attempted to reconcile her performance to comply with the VA standard of care versus Dr. Swetz's unapproved changes.

17. Dr Swetz also criticized Dr. Hogan for the time she took in counseling patients and families and specifically directed her not to discuss with patients and families their eligibility for VA benefits, which is violation of Federal law and the VA's standard of care.

3

18. Dr. Swetz retaliated against Dr. Hogan for her professional association with Dr. Michael Johnson, an African American and VA pharmacist, whom Dr. Swetz also harassed. Dr. Swetz often spoke negatively and critically about Dr. Hogan to her peers and other physicians, which is an ethics violation.

19.a. Prior to Dr. Swetz's tenure , there was a National Palliative Care template and OPPE form used and approved by all VA facilities  to review the quality of a physician's performance in palliative care.

19.b. In March 2016 Dr. Swetz changed the form, without first submitting it to the business office for approval (which was the proper procedure). Dr. Hogan forwarded the form to the business office for their approval, before she began to use it.

19.d Dr. Swetz also changed codes on certain procedures without input or approval of the business office (this was later rejected by the business office, but only after a year, which required extensive work in re-coding procedures that had been wrongly coded pursuant to Dr. Swetz's erroneous codes).

19.e. Historically, these OPPE forms are peer –reviewed and presented to the physician every quarter. However, in April 2016 Dr. Swetz presented Dr. Hogan with 4 quarters of OPPE forms, all of which he filled out.

19.f. The first 2 quarters (prior to his implementation of his version of the OPPE form and coding as described above) were all satisfactory.

19.g. The 2 quarters after the changes by Dr. Swetz were not satisfactory because those reviewing Dr. Hogan's work were doing so under the previous national template / form while Dr. Hogan had documented according to Dr. Swetz's, template.

20.a. In the proficiency report and in practice, Dr. Swetz criticized Dr. Hogan for spending too much time with palliative care patients and their families in counseling and consoling them.

20.b. Dr. Swetz and informing them of what VA benefits to which they may be entitled. Dr. Swetz ordered Dr. Hogan to stop providing counseling regarding benefits. Ironically, thereafter on several occasions Dr. Swetz ordered Dr. Hogan to provide such information.

21. Dr. Hogan would also encourage physicians to write expedited letters in support of a patient's application for benefits (in an attempt to have the benefits awarded before the patient died). Dr. Swetz ordered her to stop this practice, which she did.

22. In the 2015-2016 proficiency report, Dr. Swetz also required Dr. Hogan to create a time log for 6 months to account for her daily / hourly activities, which she provided.

23.a. Dr. Swetz alleged that Dr. Hogan had 3 patients sign incorrect informed consent documents for the ENABLE research study.

23.b. However, the forms were not incorrect forms, but old forms.

23.c. Dr. Hogan was not informed the form had been changed and was not provided the new form by Dr. Swetz or the study coordinator.

24.a. Dr. Swetz was critical of the amount of referrals Dr. Hogan received.

24.b. This is not within the control of Dr. Hogan.

24.c. The Birmingham VA is 120 bed hospital. On some days there may be no palliative care patients.

24.d. Regardless, Dr. Hogan was making multiple efforts to increase referrals. She would work with attending physician on a daily basis to identify palliative care patients.

24.e. Dr. Hogan would make daily checks by each team room, hospitalists physicians, and Teams A-E and ICU units for referrals.

24.f. Dr. Hogan would inquire daily with other physicians who had sent her referrals in the past.

24.g. Dr. Hogan checked with nurses on units to identify DNR / DNI patients or on hospice.

24.h. Dr. Hogan educated all units and staff as to palliative care, even during new employee orientation.

25.a. In March 2017, Dr. Swetz gave Dr. Hogan a "not satisfactory" mark on "peer reviews / sentinel events not reported to peer review committee".

25.b. Dr. Hogan is not aware of any such event nor was such event discussed with her.

26.a. Dr. Swetz also gave Dr. Hogan "not satisfactory" ratings in the category of ongoing charting issues and documentation issues that relate to Dr. Swetz changing the charting process as described above.

26.b. Additionally, the template Dr. Swetz created, and his charting requirements, were more in line with medical / internal medicine criteria than palliative care.

27. Dr. Swetz performed all the evaluations and assessments himself, without seeking input from patients or nursing staff, despite falsely noting that the assessments of Dr. Hogan's were through communication with nurses, staff and patients.

28.a. Dr. Swetz noted in one of his assements / evaluations that during the Inter Disciplinary Team (IDT) meetings, Dr. Hogan would sit next to and converse with Dr. Michael Johnson, African American pharmacist.

28.b. Dr. Hogan and Dr. Johnson would talk and converse during these meetings (as would all other team members).

28.c. However, Dr. Swetz would single our Dr. Hogan and Dr. Johnson for criticism.

28.d. Dr. Swetz directed Dr. Hogan not to sit next to Dr. Johnson during these meetings and ultimately banned her from the meetings altogether, stating "I can't control him (referring to Dr. Johnson) but I can control you."

29.a. In August-Sept, 2017-Proficiency Report Dr. Swetz rated Dr. Hogan "Low Satisfactory"

29.b. This, despite the fact that he noted Dr. Hogan's performance regarding variable census and service demand had improved.

29.c. He also noted that Dr. Hogan had improved in working collaborative with palliative physicians to review consult assessments and make care recommendations.

29.d. Dr. Swetz continued to remain critically of Dr. Hogan for informing palliative care patients and their families of what VA benefits to which they may be entitled and requesting expedited benefits letter from physicians.

29.e. However, per Dr. Swetz's previous directive as described above, Dr. Hogan had ceased that practice.

29.f. Dr. Michael Johnson wrote a letter to the Director of the Birmingham VA facility critical of Dr. Swetz's directive.

29.g. Dr.Swetz also noted that Dr. Hogan's performance would hopefully improve due to her updated scope of practice.

29.h. Dr. Swetz attempted to revised Dr. Hogan's scope of practice, parts of which included changing of her tour of duty and he had no authorization or ability to do.

29.i. This effort was rejected by Human Resources.

30.a. Dr. Swetz fabricated patient / employee complaints against Dr. Hogan in April 2018.

30.b. Dr. Swetz made an allegation that Dr. Hogan was bullying an employee.

30.c. The only documentation in support of this allegation was a report of contact by the nurse who Dr. Hogan allegedly bullied. The nurse makes no allegation of being bullied, harassed threatened or suffering any appropriate conduct by Dr. Hogan.

30. d. Despite this, this incident was made part of Dr. Hogan's disciplinary file.

30.e. The granddaughter of a patient had called in a complaint left on the voicemail of the Hospice Coordinator. Dr. Swetz copied the voicemail onto his personal cell phone and played it for Dr. Hogan in a counselling session.

30.f. The complaint never identified Dr. Hogan. Dr. Hogan, who denied the allegations made by the patient's granddaughter that a "head nurse" was berating another nurse. The R.N. was allegedly being "berated" denied the allegation as well.

30.g   Despite this, this incident was made part of Dr. Hogan's disciplinary file.

31.a.  In April, 2018 Dr. Swetz also accused Dr. Hogan of documentation errors. These issues involved medical care, not palliative care.

31.b. While Dr. Hogan transferred the patient to palliative care, she did not change any medical orders, but noted that all **medical orders** were to be continued until reviewed by the treating physician or as needed by any treating / attending nurses "prn".

31.c. Dr. Hogan's OPPE for the first quarter of 2018 2018 she scored unsatisfactorily in only 1 category-Appropriate medical decision-making in documents. (as assessed by Dr. Virginia Campbell).

31.d. Dr. Hogan, as a Nurse Practitioner in palliative care, does make medical decisions but patients were presented to attending physicians daily and these physicians were required to sign off on 100% of Dr. Hogan's notes

31.e. In the review of the documentation of 4 patients, Dr, Hogan was found to be deficient (score of 9 with more than 11 be satisfactory) on only one.

31.f. Despite this single occurrence, an FCCR was initiated by Dr. Swetz on June 26, 2018 and completed July 17, 2018.

31.g. The review was conducted by independent peers of Dr. Hogan who were not familiar with or informed of the use by Dr. Hogan of Dr. Swetz's revised template.

31.h. Consequently, the peer review assessed Dr. Hogan's work using the wrong template. Consequently, their report was not favorable to Dr. Hogan.

31.i. The review did note that a structured national template for palliative care was needed.

31.j. This structured national template was being used prior to Dr. Swetz's changes.

31.k. On May 16, 2018, Dr. Hogan, with a union representative present, met with the Chief of Staff and, in response to constant problems with and criticism from Dr. Swetz (as described above) Dr. Hogan requested an FCCR.

31.k. Dr. Hogan never received any results of her request.

32.a. Dr. Hogan consulted continually with Dr. Virginia Campbell in attempting to satisfy Dr. Swetz's ever changing and ambiguous documentation / charting process.

32.b. Dr. Campbell admitted on several occasions that she "did not know what Dr. Swetz wanted."

33. Based on the FFCR in June and July 2018 Dr. Swetz gave Dr. Hogan an unsatisfactory rating on her annual proficiency report in August 2018.

34. A notice of proposed demotion was served on Dr. Hogan on February 27, 2019.

35. On March 15, 2019 Dr. Hogan was demoted to a Staff Nurse and transferred to Community Service Care.

36. On April 1, 2019 Dr. Hogan resigned from the demoted position.

37. On April 4, 2019 Dr. Hogan filed a complaint of race discrimination with the Defendant's Office of Resolution Management.

38. On July 3, 2019 the Defendant closed the informally counselling of Dr. Hogan's complaint of discrimination.

39. On July 8, 2019 counsel for Dr. Hogan received the notice that the informally counselling had been closed.

40. On July 19, 2019 Dr. Hogan filed a formal complaint of discrimination with the Defendant's Office of Resolution Management.

41. On or about October 15, 2019 Stacy Vasquez, Director of the Defendant's Birmingham Medical facility threatened to make knowingly and intentionally false and derogatory reports regarding Dr. Hogan to the Alabama Board of Nursing.

42. Vasquez's reports were based solely on Dr. Swetz's criticisms and assessments of Dr. Hogan as described above.

43. The reports referenced as Dr. Hogan as continuing to be employed by the Defendant.

44. Dr. Hogan responded timely and specifically to the allegations.

45. Despite this, Vasquesz reported the knowingly and intentionally false and derogatory reports regarding Dr. Hogan to the Alabama Board of Nursing and failed to include Dr. Hoan's responses.

## COUNT I

### Race Discrimination-Hostile Work environment

46. Paragraphs One (1) through Forty-Five (45) are realleged and incorporated herein by reference and made paragraph 46.

47. Dr. Hogan was the only African-American under Dr. Swetz's direct supervision. None of the actions taken by Dr. Swetz against Dr. Hogan were taken against her co-employees under Dr. Swetz's supervision, all of whom were white.

48. Dr Swetz also committed the actions described above because of Dr. Hogan's relations with Dr. Michael Johnson, African-American pharmacist.

49. The above-described conduct represents hostile work environment based on Dr. Hogan's race.

50. Such conduct was repeated pervasive, severe, and interfered with Dr. Hogan's performance her job.

51. Further, Dr. Swetz created such a hostile work environment in order to artificially and unfairly negatively affect Dr. Hogan's job performance to create a false reason for discipling her and causing her demotion.

52. As a result of the actions as described above, the Plaintiff was caused to suffer and continues to suffer humiliation, embarrassment, physical, mental and emotion anguish.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully prays that this Honorable Court will assume jurisdiction of this action and after trial:

11

A. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the VA, are violative of the rights of the Plaintiff as secured by 42 U.S.C., Sections 1981 and 2000(e), et. seq., as amended.

B. Grant the Plaintiff a permanent injunction, enjoining the VA, its employees, servants, agents and those acting in concert with the VA, and at its request from continuing to violate the above cited laws.

C. Award the Plaintiff an appropriate amount of lost wages and interest; compensatory damages; cost of prosecuting this action and attorney's fees.

D. Reinstate the Plaintiff to her position as a Nurse Practitioner in the Defendant's Palliative Care services, or, in the alternative, award the Plaintiff an appropriate amount of front pay.

E. The Plaintiff further prays for such other, special, additional and further relief and benefits as this Honorable Court may deem necessary and appropriate.

## COUNT II

### Retaliation - Reprisal

53. Paragraphs One (1) through Fifty-Two (52) are realleged and incorporated herein by reference and made paragraph 53.

54. The conduct of the Defendant's Director as described in paragraphs ##41-45 represents retaliation / reprisal against the Plaintiff for filing her informal and formal complaints of race discrimination.

55. At the time of such reporting, Dr. Hogan was no longer an employee of the Defendant and had not been employee for 7 months. Thus, Vasquez had no legal duty to report such allegations.

56. The allegations were false, and Vasquez knew or reasonably should have known they were false.

57. The last of the allegations had occurred in April 2018.

58. As a result of the actions as described above, the Plaintiff was caused to suffer and continues to suffer humiliation, embarrassment, physical, mental and emotion anguish.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully prays that this Honorable Court will assume jurisdiction of this action and after trial:

A. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the VA, are violative of the rights of the Plaintiff as secured by 42 U.S.C., Sections 1981 and 2000(e), et. seq., as amended.

B. Grant the Plaintiff a permanent injunction, enjoining the VA, its employees, servants, agents and those acting in concert with the VA, and at its request from continuing to violate the above cited laws.

C. Award the Plaintiff an appropriate amount of lost wages and interest; compensatory damages; cost of prosecuting this action and attorney's fees.

D. The Plaintiff further prays for such other, special, additional and further relief and benefits as this Honorable Court may deem necessary and appropriate.

**PLAINTIFF DEMANDS TRIAL**

**BY STRUCK JURY.**

Respectfully Submitted,

_____
JAMES M. WOOTEN
Attorney for the Plaintiff
200 Century Park South
Birmingham, Alabama 35226
(205) 322-7707